## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY KOJO ODURO, JR.,

        Plaintiff,

        v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO. 3:21-cv-00078

(SAPORITO, M.J.)

## **MEMORANDUM**

In this matter, the plaintiff, Anthony Kojo Oduro, Jr., seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On October 9, 2018, Oduro protectively filed applications for disability insurance benefits and supplemental security income, both asserting a disability onset date of October 6, 2018. His applications were initially denied by state agency reviewers on November 6, 2018. The plaintiff then requested an administrative hearing.

A hearing was held on October 30, 2019, before an administrative law judge, Theodore Burock (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Patricia Scutt. The plaintiff was represented by counsel at the hearing.

On April 22, 2020, the ALJ denied Oduro's applications for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Oduro was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Oduro had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ found that Oduro had the severe impairments of: hip impairment; shoulder impairment; obesity; mild bipolar disorder; and impulse control

disorder.

At step three, the ALJ found that Oduro did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In doing so, the ALJ considered Oduro's limitations in four broad functional areas as a result of his mental disorders, finding moderate limitations in three functional areas—(1) understanding, remembering, or applying information, (2) interacting with others, and (3) adapting or managing oneself—and mild limitations in the fourth area—concentrating, persisting, or maintaining pace. *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Oduro's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Oduro had

the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b),[2] with the following limitations:

> [H]e could sit for 4 hours, stand for 3 hours, and walk
> for 2 hours at one time; and sit for 6 hours, stand for 5
> hours, and walk for 4 hours total in an 8-hour workday.
> The claimant could continuously use his non-dominant
> left upper extremit[y] for all functions, frequently use
> his dominant right upper extremity for all functions,
> and frequently use his bilateral lower extremities for
> operation of foot controls. He could occasionally climb
> ramps and stairs, balance, stoop, kneel[,] crouch[,] and
> crawl, but could never climb ladders, ropes, or
> scaffolds. The claimant could not be exposed to
> unprotected heights, but could occasionally be exposed
> to moving mechanical parts, operating motor vehicles,
> humidity, wetness, cold, heat, and vibration, and
> continuously exposed to dust, odors, and pulmonary
> irritants. He could perform routine, repetitive tasks, as
> required by unskilled labor, occasionally interact with
> coworkers and supervisors, but could not have any
> public interaction.

(Tr. 19–20.)

In making these factual findings regarding Oduro's RFC, the ALJ

considered his symptoms and the extent to which they could reasonably

be accepted as consistent with the objective medical evidence and other

---

[2] The Social Security regulations define "light work" as a job that
"involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighting up to 10 pounds." 20 C.F.R.
§§ 404.1567(b), 416.967(b).

evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Oduro was unable to perform his past relevant work as actually and generally performed.

At step five, the ALJ concluded that Oduro was capable of performing other work that exists in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Oduro was capable of performing the requirements of representative occupations such as bottle label inspector (DOT # 920.687-042), garment bagger (DOT # 920.687-018), and hand bander (DOT # 920.687-026). Based on this finding, the ALJ concluded that Oduro was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on November 16, 2020,

making the ALJ's April 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on January 13, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Oduro asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ erred in failing to consider the plaintiff's applications under the seven-step "medical improvement" standard applicable to a reinstatement of benefits proceeding, rather

than the usual five-step sequential evaluation process, because he previously had been awarded supplemental security income ("SSI") benefits, which were terminated when he received a litigation settlement that caused him to exceed the applicable countable resources limit; (2) the ALJ erred in determining that an alleged intellectual disability / learning disability was a non-medically determinable impairment at step two of the five-step sequential evaluation process, and in failing to consider this impairment in later steps; (3) the ALJ erred in finding various other impairments "not severe" at step two of the five-step sequential evaluation process, despite compelling evidence to the contrary; (4) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of a non-examining state agency medical consultant; (5) the ALJ failed to properly evaluate the medical opinion of the plaintiff's treating mental health counselor; (6) the ALJ erred in failing to order a consultative mental examination; and (7) the ALJ erred in failing to properly consider the plaintiff's non-exertional reaching impairment under Social Security Ruling 83-13.[3]

---

[3] The plaintiff's brief articulated three conclusory, extremely general claims of error: (1) the ALJ's RFC determination failed to include
*(continued on next page)*

## A. Seven-Step "Medical Improvement" Standard

At his hearing before the ALJ, Oduro's attorney noted that Oduro had previously received SSI benefits, which had been discontinued when he received a $100,000 personal injury settlement, causing him to exceed the applicable countable resources limit for SSI program eligibility. (Tr. 38.) In subsequent correspondence addressed to the ALJ, Oduro's attorney advised that Oduro had received a distribution of $100,000 from the litigation settlement when he turned twenty-one,[4] which caused the suspension or termination of his SSI benefits. (Tr. 276–77, 278–79.) Oduro and his parents, however, no longer had any documentation of the settlement or any other information. (*Id.*) There is no evidence in the administrative record concerning this previous award of SSI benefits. By

_____

all limitations caused by his severe impairments; (2) the ALJ's RFC determination failed to include all limitations cause by impairments the ALJ found to be non-severe, or barely mentioned; and (3) the ALJ's RFC determination was defective because the ALJ failed to afford appropriate weight to medical opinions on which it was based. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that these very generalized grievances rest on the specific errors we have articulated above.

[4] The attorney's letters imply that this litigation settlement had been obtained while Oduro was a minor, and then held in trust until he turned twenty-one. Oduro was born in August 1987, suggesting that he received this distribution in or soon after August 2008. (Tr. 276–77, 278–79.)

the time he had protectively filed the instant applications for disability benefits in November 2018, these assets had been exhausted.[5]

Oduro contends that the ALJ erred in considering his application for benefits anew, applying the usual five-step sequential evaluation process. Instead, Oduro contends that the ALJ should have applied the more favorable seven-step "medical improvement" standard typically applicable to proceedings for reinstatement of suspended SSI benefits, set forth in 20 C.F.R. § 416.994.[6] (Doc. 19, at 19–21.)

---

[5] In addition, we note that Oduro had engaged in sufficient paid work activity in the interim to qualify for disability insurance benefits.

[6] The plaintiff has cited 20 C.F.R. § 404.1594 in his brief on appeal (Doc. 19, at 19–20), and in his earlier request for administrative review by the Appeals Council (Tr. 7–8; *see also* Tr. 286–87.). But the plaintiff's prior benefits award was under the Title 16 SSI program; he did not previously receive benefits under the Title 2 disability insurance benefits program. Thus, 20 C.F.R. § 404.1594 is entirely inapposite. We have substituted the appropriate regulation, 20 C.F.R. § 416.994, in its place for the purposes of this memorandum opinion.

In addition, we note that the plaintiff has also referenced the agency's Program Operations Manual System ("POMS"), arguing that the ALJ should have considered his applications as a request for reinstatement of SSI benefits under POMS SI 02301.205 as well. But statements in POMS lack the force of law and create no judicially enforceable rights. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) ("[T]he Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA."); *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996) ("POMS is the authorized means for issuing official Social Security policy and operating instructions. These regulations do

*(continued on next page)*

Under the Social Security Act and its implementing regulations, an unmarried individual does not qualify for SSI benefits if his or her countable resources exceed $2,000. *See* 42 U.S.C. § 1382(a)(1)(B), (3)(B); 20 C.F.R. § 416.1205(a), (c). After a claimant is found to be disabled and entitled to receive SSI benefits, the regulations provide that the recipient's eligibility for those monthly benefits will be suspended if his or her countable resources exceed $2,000. *See* 20 C.F.R. § 416.1324(a). The payment of suspended SSI benefits may be resumed the month after the recipient's countable resources no longer exceed the $2,000 limit; a new application for benefits is not required. *See id.* § 416.1324(b); *see also Gordon v. Sec'y of Health & Hum. Serv.*, 803 F.2d 1071, 1073 (9th Cir. 1986). But if a recipient's benefits remain suspended for twelve consecutive months, the SSI benefits will be *terminated* by operation of law, and resumption or reinstatement is no longer possible; a new application for benefits is required. *See* 20 C.F.R. § 416.1335; *Gordon*, 803 F.2d at 1074 ("Under 20 C.F.R. § 416.1335, eligibility for benefits is

---

not have the force of law.") (citation omitted); *Bordes v. Comm'r of Soc. Sec.*, 235 Fed. App'x 853, 859 (3d Cir. 2007) ("POMS and HALLEX provisions . . . lack the force of law and create no judicially-enforceable rights.").

terminated when twelve calendar months have elapsed after suspension for ineligibility if the beneficiary has not reestablished eligibility for benefits."); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008); *Mayes v. Soc. Sec. Admin.*, 190 Fed. App'x 183, 186 (3d Cir. 2006) (per curiam); *Warren v. Bowen*, 804 F.2d 1120, 1121 (9th Cir. 1986) (per curiam); *Van Gilder v. Colvin*, Civil Action No. 12-1037, 2013 WL 1891345, at *4 (W.D. Pa. Apr. 16, 2013), *report & recommendation adopted by* 2013 WL 1891350 (W.D. Pa. May 6, 2013); *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1309 (D. Kan. 2007).

Here, although the details are not clearly set out by the record, the plaintiff's prior award of SSI benefits was clearly suspended, and then terminated by operation of law, due to excess resources several years before he filed the two disability benefits applications currently before the court.[7] The administrative appeal currently before us arises out of an April 2020 ALJ decision denying applications for disability benefits filed in November 2018, not the administrative decision suspending Oduro's

---

[7] The Commissioner's brief contains a representation by counsel that Oduro's previous award of SSI benefits had been approved in October 2001 and then suspended in July 2010 due to excess resources. (Doc. 23, at 34 n.11.)

SSI benefits several years earlier. Contrary to the plaintiff's argument, there is simply no basis for consideration of his applications under the seven-step "medical improvement" standard set forth in 20 C.F.R. § 416.994. *See Zavilla v. Astrue*, Civil Action No. 09-133, 2009 WL 3364853, at *17 (W.D. Pa. Oct. 16, 2009) ("[T]he 'medical improvement' standard is not applied when a claimant's eligibility for benefits was terminated and he later re-applies for benefits. After a termination of benefits, a claimant is required to file a new application[,] which is evaluated under the familiar five-step standard . . . ."); *see also Stubbs-Danielson*, 539 F.3d at 1172 ("[T]here is no basis for applying a presumption of continuing disability where, as here, a claimant's reapplication comes at least 6 years after a termination of benefits and more than 15 years after her previously successful application."); *Warren*, 804 F.2d at 1121 (no presumption of continuing disability for application filed almost three years after prior award of SSI benefits was suspended). Because this case involved new applications for benefits, rather than a continuing disability review, the ALJ properly applied the five-step sequential evaluation process provided in 20 C.F.R. §§ 404.1520 and 416.920, rather than the seven-step "medical improvement" standard

provided in 20 C.F.R. § 416.994 for continuing disability reviews. *Brennan*, 501 F. Supp. 2d at 1309; *see also Van Gilder*, 2013 WL 1891345, at *4.

Accordingly, we find no error in the ALJ's failure to apply the medical improvement standard set forth in 20 C.F.R. § 416.994.

### B. Step Two Non-Medically Determinable Impairments

At step two, the ALJ considered whether Oduro had medically determinable impairments of intellectual disability or learning disorder. The ALJ reviewed the medical evidence of record, stating:

> [T]he record contains no medical evidence to substantiate either impairment results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques as described in [42 U.S.C. § 423(d)(3)] and [§ 1382c(a)(3)(D)]. While he testified during the hearing that he has difficulty with reading and comprehension, the undersigned notes that he indicated that he was the person who completed his Disability Report and his Function Report. Although there is some discussion in his September 2019 psychiatric evaluation that the claimant had a learning disability, this was based on his self-reporting and not independent diagnostic testing. In fact, emergency psychiatric records from when the claimant was a child reflects that he was in special education secondary to behavioral problems rather than cognitive limitations. Furthermore, during his consultative internal medicine examination, he identified one of his

> strengths as his intelligence. Therefore, the undersigned finds that the claimant's alleged intellectual disability/learning disorder is a non-medically determinable impairment.

(Tr. 17 (citation omitted).) As a consequence, the ALJ did not consider any impairments as a result of an intellectual disability or learning disorder in his evaluation of Oduro's RFC.

A "medically determinable impairment" is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). But, as noted by the ALJ, the only mention of an intellectual disability or learning disorder in the medical records before the ALJ were psychiatric treatment notes reflecting Oduro's *subjective* report of an unspecified learning disability. (Tr. 536 ("The patient is only able to provide a limited amount of history. He lacks details, and this may be due to a learning disability that he reports.").) The plaintiff fails to identify any other medical evidence to support his allegation of an intellectual disability or learning disorder.

A plaintiff's own statements "of symptoms, a diagnosis, or a medical opinion" may not be used to establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1521, 416.921; *see also*

*Delgado v. Comm'r of Soc. Sec.*, Civ. No. 20-283, 2021 WL 1686704, at *5 (D.N.J. Apr. 29, 2021). Thus, in the absence of any objective medical evidence of an intellectual disability or learning disorder, we find there is substantial evidence to support the ALJ's finding that Oduro's alleged intellectual disability or learning disorder were not medically determinable impairments. *See Scipio v. Comm'r of Soc. Sec.*, 611 Fed. App'x 99, 101–02 (3d Cir. 2015) (per curiam). Because the ALJ is only required to consider medically determinable impairments of which he is aware, *see* 20 C.F.R. §§ 404.1521, 404.1545(a)(2), 416.921, 416.945(a)(2), the ALJ's failure to consider the plaintiff's alleged mental impairments intellectual disability or learning disorder in later determining his RFC was not in error. *See Switzer v. Comm'r of Soc. Sec.*, No. 1:18-cv-16554-NLH, 2019 WL 5485526, at *6 (D.N.J. Oct. 24, 2019) (finding that, in determining a claimant's RFC, "the ALJ does not need to consider any alleged conditions that are not medically determinable").

## C. Step Two Severity Determination

The plaintiff appears to contend that the ALJ erred in finding that various other physical medical conditions were not severe impairments.

At step two, a claimant bears the burden of proving that he suffers

from "a medically severe impairment or combination of impairments."
*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry
is merely "a *de minimis* screening device to dispose of groundless claims."
*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he
analysis at step two is wholly independent of the analysis at later
steps. . . . [N]ot finding certain impairments severe at step two does not
affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F.
Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805
Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later
step, any error at Step Two would not alter that remainder of the five-
step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d
486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so
long as one of a claimant's limitations is found to be severe, error at that
step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145
n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at
Step Two, even if he had erroneously concluded that some other
impairments were nonsevere, any error was harmless.").

Here, the ALJ found in Oduro's favor at step two, finding that he
had multiple severe physical and mental impairments, and then

proceeded on to step three of the five-step sequential evaluation process. Thus, any error with respect to evaluation of the severity of any other impairments at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed. App'x at 88.

### D. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in November 2018. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.[8]

---

[8] We note that counsel for the plaintiff has mistakenly premised his entire argument on this point—that his treating mental health counselor's opinion was entitled to controlling weight, or at least great weight—on the old regulations, which no longer apply. This is not the only case in which this same attorney has made this same, fundamental error. *See, e.g.*, Pl.'s Br., *Rivera v. Kijakazi*, Case No. 3:21-cv-01574 (M.D. Pa. filed Feb. 14, 2022) (examining physician), ECF No. 12; Pl.'s Br., *Gonzalez v. Kijakazi*, Case No. 3:21-cv-00012 (M.D. Pa. filed Aug. 9, 2021) (treating physician), ECF No. 15; Pl.'s Br., *Broaddus v. Kijakazi*, Case No. 3:20-cv-01418 (M.D. Pa. filed July 13, 2021) (treating physician), ECF
*(continued on next page)*

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory

---

No. 21; Pl.'s Br., *Torres v. Kijakazi*, Case No. 3:20-cv-02049 (M.D. Pa. filed July 1, 2021) (treating physician), ECF No. 15; Pl.'s Br., *Martinez v. Kijakazi*, Case No. 3:20-cv-01550 (M.D. Pa. filed June 7, 2021) (treating physician), ECF No. 19. Indeed, even under the old regulations, a mental health counselor's opinion would never be entitled to controlling weight, as a counselor or therapist was not considered an "acceptable medical source." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (explaining requirements for a treating source's medical opinion to be assigned "controlling weight"); *id.* §§ 404.1527(a)(1), 416.1527(a)(1) (limiting "medical opinions" to "statements from acceptable medical sources"); *id.* §§ 404.1502(a), 416.902(a) (defining "acceptable medical source," but not including mental health counselors or therapists). In any event, we encourage counsel to revisit and revise his legal boilerplate on this issue before filing any future briefs.

diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520(a), 416.920c(a), "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520, 416.920c(b). If a medical source provides one or more medical opinions,

the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), and *id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), and *id.* §§

404.1527(c)(4), 416.927(c)(4) (consistency).[9] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. §§ 404.1520(c)(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at \*8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at \*8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at \*8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

---

[9] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

### 1. State Agency Psychological Consultant

The prior administrative findings in this case included the opinion of a state agency psychological consultant, Melissa Franks, Psy.D., recorded on January 11, 2019, who found no medically determinable mental impairments. (Tr. 73, 87.) Upon review of Dr. Frank's opinion, the ALJ found it "not persuasive" because "the longitudinal medical evidence, as presently constituted, supports that he has severe mental impairments and a moderate degree of mental functional limitation in all areas of mental functioning, except for his ability to concentrate, persist, or maintain pace." (Tr. 26.)

The plaintiff does not appear to challenge the ALJ's evaluation of Dr. Franks's findings and opinion with respect to Oduro's mental functional limitations.

### 2. State Agency Medical Consultant and Consultative Examining Physician

The ALJ considered the opinions of a state agency medical consultant and a consultative examining physician together, finding them both to be "most persuasive," but finding the non-examining medical consultant's opinions to be "more persuasive" than those of the consultative examining physician. (Tr. 25–26.)

The prior administrative findings in this case included the opinions of a state agency medical consultant, Candelaria Legaspi, M.D., recorded on January 22, 2019, who had found the claimant capable of lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Legaspi found that Oduro was capable of standing or walking for a total of four hours in an eight-hour workday or sitting for a total of six hours in an eight-hour workday. Dr. Legaspi found that Oduro was capable of frequent crouching, crawling, or climbing of ramps or stairs, but only occasional climbing of ladders, ropes, or scaffolds. Dr. Legaspi found that Oduro's right shoulder pain limited his ability to reach overhead, in front, or laterally with his right upper extremity. She found that Oduro should avoid even moderate exposure to hazards such as moving machinery or unprotected heights. (Tr. 75–77, 89–91.)

On January 7, 2019, Oduro was seen and examined by a consultative examining physician, Ahmed Kneifati, M.D. On examination, Dr. Kneifati observed that Oduro appeared to be in no acute distress, with normal gait, he could walk on his heels and toes without difficulty, he was limited to 70% in squatting, he exhibited normal stance, he needed no help changing clothes or getting on and off the exam table,

and he was able to rise from a chair without difficulty. Dr. Kneifati found no scoliosis, kyphosis, or abnormality in the thoracic spine, straight-leg raise was negative bilaterally both seated and supine, he observed no evident joint deformity, the joints were stable, and he found tenderness in the lateral left hip, but no redness, heat, or effusion. Dr. Kneifati noted 5/5 strength in all extremities, and he observed no evident muscle atrophy. Dr. Kneifati recorded a diagnosis of left hip pain status post left hip fracture with fixation with screws, and a fair prognosis. Dr. Kneifati also completed an agency form report on Oduro's ability to do work-related activities. Dr. Kneifait opined that Oduro was capable of lifting or carrying up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally. Dr. Kneifati found that Oduro was capable of sitting up to 4 hours at a time or 6 hours total in an 8-hour workday, standing up to 3 hours at a time or 5 hours total in an 8-hour workday, and walking up to 2 hours at a time or 4 hours total in an 8-hour workday. Dr. Kneifati found Oduro limited to no more than frequent (1/3 to 2/3 of the time) use of his left foot to operate foot controls, but no limitations to the use of his right foot or to the use of either hand to reach, handle, finger, feel, push or pull. Dr. Kneifati opined that Oduro was

limited to only occasional balancing, stooping, and climbing of stairs, ramps, ladders, or scaffolds, and no more than frequent kneeling, crouching, and crawling. Dr. Kneifati found that Oduro was subject to certain environmental limitations, including only occasional exposure to unprotected heights, moving mechanical parts, operation of a motor vehicle, humidity or wetness, extreme cold, or extreme heat. (Tr. 357–70.)

In evaluating Dr. Legaspi's and Dr. Kneifati's opinions together, the ALJ found that:

> In the absence of . . . a pervasive statement of limitations by one of claimant's treating medical providers supporting the extent of the alleged limitations, the undersigned finds the opinions of Dr. Kneifati and the State Agency's medical consultant, Candelaria Legaspi, M.D., are the most persuasive, but the latter opinion is more persuasive. . . . The undersigned acknowledges that these consultants did not have a treating relationship with the claimant and while Dr. Kneifati examined him, it was only on a single occasion. Additionally, these medical consultants did not have the opportunity to review the complete medical evidence, personally observe the claimant's presentation at an administrative hearing, or listen to his testimony. Relying on the overall record, including the claimant's testimony at the hearing, and additional medical evidence received at the hearing level, the undersigned finds that Dr. Legaspi's opinion is more consistent with the preponderance of all the evidence while Dr. Kneifati's opinion, while consistent

with his own examination of the claimant fails to account for the claimant's right upper extremity impairment. Both consultants appropriately limited the claimant's exertional and postural activities because of his hip impairment, but Dr. Legaspi's opinion includes additional limitations due to the exacerbating effects of the claimant's obesity. As the totality of the objective evidence better supports Dr. Legaspi's opinion, the undersigned finds that this assessment is more persuasive than that of Dr. Kneifati. Nevertheless, as both consultants are specialists in their respective fields and are familiar with the definitions and evidentiary standards used by the Agency, the undersigned finds that their assessments are persuasive to the extent described.

(Tr. 25–26 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency, expressly articulating his findings on these required factors. He also expressly addressed his consideration of other factors, including each doctor's non-treating or non-examining relationship with the claimant, each doctor's specialization, each doctor's familiarity with the other evidence in the claim, and each doctor's understanding of the agency's disability program's policies and evidentiary requirements.

The plaintiff primarily objects to this evaluation of the state agency medical consultant's findings and opinions based on the fact that Dr.

Legaspi never examined Oduro in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence when the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

The plaintiff also appears to suggest that the ALJ's evaluation of the opinions of these medical sources was lacking because it failed to more robustly cite specific medical evidence that he found supportive of the consultant's findings. But "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004); *see also Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.") (citation omitted);

*Kupiec v. Kijakazi*, No. 20-1240, 2021 WL 5015775, at *2 (W.D. Pa. Oct. 28, 2021) ("An ALJ is not required to discuss or cite every piece of evidence in the record."). It is only necessary that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions, which it does here. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Accordingly, we find the ALJ's evaluation of the prior administrative findings in this case, including the findings and medical opinions of the state agency non-examining medical consultant, Dr. Legaspi, and the ALJ's evaluation of the medical opinions of the consultative examining physician, Dr. Kneifati, are supported by substantial evidence and were reached based upon a correct application of the relevant law.

### 3. *Treating Mental Health Counselor*

On September 27, 2019, Oduro's treating mental health counselor, Alejandro Alvarez, MDiv, CCJAP, completed a mental residual functional capacity assessment. Alvarez noted that Oduro had been treating with his practice on a biweekly basis for about five months. He reported a current diagnosis of bipolar disorder with no prognosis.

Alvarez opined that Oduro had mild or moderate limitations in various aspects of each of the four areas of mental functioning: understanding, remembering, or applying information; interacting with others; sustained concentration, persistence, or pace; and adapting or managing oneself. Alvarez opined that Oduro's mental impairment would substantially interfere with his ability to work on task at least 15% of the time. He further opined that Oduro would miss 10 days of work each month because of his mental impairment or treatment. (Tr. 478–82.)

Upon review of Alvarez's opinion, the ALJ found it only "partially persuasive." In particular, the ALJ found that:

> The claimant's therapy notes support the counselor's opinion regarding . . . his moderate limitations in the areas of understanding, remembering, and applying information, interacting with others, and adapting or managing oneself. However, Counselor Alvarez's statements about extreme absenteeism and time off tasks, which fail to describe the claimant's functional abilities or limitation, or the like, are statements on issues reserved to the Commissioner. Statements on issues reserved to the Commissioner are inherently neither valuable nor persuasive to the issue of whether the claimant is disabled. These statements are inconsistent with the preponderance of all the evidence, including the claimant's therapy notes and his admissions that he found mental health treatment beneficial in controlling his symptoms. The counselor's statements are also internally inconsistent, contradictorily finding that the claimant could work on

a regular and sustained basis but he would miss work
10 days per month. The undersigned acknowledges
that the counselor had a treating relationship with the
claimant, but when he provided the opinion, he had
only treated the claimant for five months. Therefore,
the undersigned finds that this opinion is only partially
persuasive.

(Tr. 26–27 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record
and the relevant factors of supportability and consistency, expressly
articulating his findings on these required factors. He also expressly
addressed his consideration of other factors, including the counselor's
treating relationship with the claimant and the short duration of that
relationship at the time of the assessment. Moreover, the ALJ correctly
determined that the counselor's statements regarding excessive
absenteeism and an inability to "work on a regular and sustained basis
at least 15% of the time" were "inherently neither valuable nor
persuasive" under the applicable regulations which expressly and
exclusively reserve to the Commissioner (or the ALJ as her designee) the
ultimate issue of whether the claimant is disabled. *See* 20 C.F.R.
§§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i) ("Statements that you are or are
not . . . able to perform regular or continuing work . . . "); *see also Knittle*,

2021 WL 5918706, at *6. Indeed, as statements on issues reserved to the Commissioner, the ALJ was under no obligation to discuss these statements by Alvarez at all under the new regulations, much less find them persuasive. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c) ("Because the evidence listed in paragraph[] . . . (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled . . . , we will not provide any analysis about how we considered such evidence in our determination or decision . . . ."). In any event, the ALJ further considered and found these statements to be inconsistent with the other evidence of record.

Accordingly, we find the ALJ's evaluation of the medical opinions and statements on issues reserved to the Commissioner by treating counselor Alvarez is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### E. Consultative Examination

The plaintiff contends that the ALJ should have obtained a consultative mental health examination of Oduro. The agency's regulations provide that it "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a

whole is insufficient to support a determination or decision on [a] claim."
20 C.F.R. §§ 410.1519a(b), 416.919a(b). An ALJ has "broad latitude in
ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162,
1166 (10th Cir. 1997).

> The decision to order a consultative examination is
> within the sound discretion of the ALJ unless the
> claimant establishes that such an examination is
> necessary to enable the ALJ to make the disability
> decision. Where the medical evidence in the record is
> inconclusive, a consultative examination is often
> required for proper resolution of a disability claim.

*Chalfant v. Comm'r of Soc. Sec.*, Civil Action No. 4:20-CV-1719, 2022 WL
838118, at *5 (M.D. Pa. Mar. 21, 2022) (citations, internal quotation
marks, and brackets omitted). In this case, however, while the medical
evidence may not compel the conclusion the plaintiff desires, it is not
inconclusive. Because a consultative mental health examination was not
necessary to enable the ALJ to make his disability decision, we find no
abuse of discretion in the ALJ's decision not to order one.

Accordingly, we find that the ALJ adequately developed the record
in the administrative proceedings below. Thus, a remand on these
grounds is not warranted.

## F. Consideration of Non-Exertional Reaching limitation

The plaintiff contends in his brief that the ALJ erred in failing to consider the reaching limitation caused by his shoulder impairment under Social Security Ruling 83-13. But Social Security Ruling 83-13 was superseded in 1985 by Social Security Ruling 85-7, which was, in turn, superseded later that same year by Social Security Ruling 85-15. *See* Soc. Sec. Ruling 83-13, 1983 WL 31261, *superseded by* Soc. Sec. Ruling 85-7, 1985 WL 56860, *superseded by* Soc. Sec. Ruling 85-15, 1985 WL 56857. In essence, Social Security Ruling 85-15 recognizes that "[s]ignificant limitations of reaching . . . may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational expert] may be needed to determine the effects of the limitations." Soc. Sec. Ruling 85-15, 1985 WL 56857, at *7. In this case, the ALJ did indeed consult a vocational expert to determine how Oduro's non-exertional limitations, including a limitation in his ability to reach with his right upper extremity, would affect the available occupational base. Moreover, the plaintiff has failed to articulate any reason why the ALJ's decision failed to comply with the requirements of Social Security Ruling 85-15, the

relevant policy ruling that has been in effect now for several decades.

Accordingly, we find no error in the ALJ's failure to consider the plaintiff's non-exertional reaching limitations under Social Security Ruling 83-13.

### III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Oduro was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: April 25, 2022                    *s/Joseph F. Saporito, Jr.*
                                                      JOSEPH F. SAPORITO, JR.
                                                      United States Magistrate Judge